**STATE of Missouri, ex rel. BASS PRO OUTDOOR WORLD, L.L.C., Relators,**

v.

**Honorable Nancy L. SCHNEIDER, Judge, Division 2, 11th Judicial District Circuit Court of St. Charles County, Respondent.**

**No. ED 93413.**

Missouri Court of Appeals, Eastern District, Writ Division One.

Oct. 6, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 30, 2009.

Application for Transfer Denied March 2, 2010.

---

Charles E. Reis IV, Littler Mendelson, PC, St. Louis, MO, for Relator.

Ray A. Gerritzen, Gerritzen & Gerritzen, St. Louis, MO, for Respondent.

KURT S. ODENWALD, Presiding Judge.

## Introduction

Bass Pro Outdoor World, L.L.C. (Relator) filed a Petition for Writ of Prohibition with this Court, seeking to prohibit the trial court, Honorable Nancy Schneider, (Respondent) from enforcing discovery orders entered on April 3, 2009, May 7, 2009, and July 24, 2009, in the action of *Kyle J. Kelly v. Bass Pro Outdoor World, L.L.C.* This action is pending in the Circuit Court of St. Charles County, Missouri, Case No. 03–CV–127432, following remand by this Court for a determination of punitive damages. *Kelly v. Bass Pro Outdoor World, L.L.C.*, 245 S.W.3d 841 (Mo.App. E.D. 2007). Relator contends that the trial court abused its discretion when entering these three discovery orders. We previously issued a Preliminary Order in Prohibition. Because we find the discovery orders issued by Respondent exceed the scope of our mandate to Respondent regarding the determination of punitive damages, the Preliminary Order in Prohibition is made absolute.

## Procedural Background

On June 12, 2003, Kyle J. Kelly (Plaintiff), a former loss prevention agent for Relator, filed his cause of action against Relator, alleging the wrongful termination of his employment. *Kelly*, 245 S.W.3d at 846. The parties conducted broad pretrial discovery during the course of the underlying case, including discovery of financial statements for three years prior to 2003, financial statements submitted to any banks or financial institutions with which Relator had loans, and a statement of Relator's net worth. On May 4, 2006, following a jury trial, the trial court entered judgment on the jury's award to Plaintiff of $4300 in actual damages and $2,800,000 in punitive damages. *Id.* at 847.

Relator appealed the verdict and judgment. On December 18, 2007, the Missouri Court of Appeals affirmed the trial court's judgment with respect to Plaintiff's wrongful termination claim, but found that the punitive damages award was constitu-

tionally "excessive and disproportionate." *Id.* at 851. This Court focused its analysis on the disparity between the harm and the amount of the punitive damages award. *Id.* at 850. Relying on *State Farm Mutual Automobile Insurance Co. v. Campbell,* 538 U.S. 408, 424, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003), we noted that "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *Kelly,* 245 S.W.3d at 851. We equally acknowledged the admonition that appellate courts do not have "license to toss aside considered jury verdicts based upon arbitrary ratios or mathematical formulae [because to] do so would undermine the essential deterrent effect provided by properly awarded punitive damages." *Id., quoting Scott v. Blue Springs Ford Sales, Inc.,* 176 S.W.3d 140, 144 (Mo. banc 2005) (Teitelman, J., concurring). Holding that the amount of punitive damages awarded was unconstitutionally excessive, this Court overturned the award and remanded the case for further proceedings consistent with its opinion. *Id.*

Following remand, Plaintiff propounded additional discovery in the form of interrogatories and document requests seeking further financial information from Relator. Plaintiff's requested discovery sought Relator's income tax returns and real estate tax information dating back to 2000, real estate appraisals, store revenues for the last five years, information regarding net worth and corporate structure, and financial statements submitted by Relator to banks for loans for the past ten years. Relator objected to all of Plaintiff's requests, but provided Plaintiff with an updated statement of its net worth and financial statement for the last three years. Relator also filed a Motion for Protective Order with Respondent seeking to prevent Plaintiff from conducting further discovery. Respondent issued an order on April 3, 2009, denying Relator's Motion for Protective Order. Respondent also ruled on Relator's objections to Plaintiff's 2008 discovery requests. Respondent later clarified its April 3 order with an order issued on May 7, 2009. In an effort to comply with Respondent's orders of April 3, 2009, and May 7, 2009, Relator provided additional financial information under seal, including an updated statement of its net worth, financial statements for the last three years, financial statements submitted to banks or financial institutions with whom Relator has loans for the last three years, and the names of corporate officers from 2000 to 2007. Relator also filed a motion requesting Respondent to reconsider its orders of April 3, 2009, and May 7, 2009. On July 24, 2009, Respondent granted Relator's Motion for Reconsideration in part. In its order of July 24, 2009, Respondent limited the information to be produced to a six-year period, from 2003 to 2008, but still required Relator to respond to all of Plaintiff's discovery requests seeking financial information as set forth in its prior discovery orders of April 3, 2009 and May 7, 2009.

Respondent's discovery orders require Relator to produce information regarding its financial condition, including loans held by Relator, insurance policies for real and personal property, total revenues for individual stores, and detailed documents regarding the taxes paid and leasing information for real estate owned by Relator. Respondent claims this financial information is relevant to the issue of Relator's net worth, a factor to be considered by Respondent in assessing the reasonableness of a punitive damages award.

Relator filed its Petition for Writ of Prohibition on August 7, 2009. In its Petition, Relator argues Respondent abused its discretion entering discovery orders that require Relator to produce and dis-

close "unnecessary" information given this Court's previous opinion and mandate, which limited the scope of the punitive damages award to ensure compliance with constitutional due process safeguards. *Kelly,* 245 S.W.3d at 851. Relator further argues that the trial court ordered it to produce confidential, sensitive information that is overbroad and burdensome, not relevant, material, or calculated to lead to the discovery of admissible evidence, and information that will cause Relator irreparable harm.

### Standard of Review

Our power to issue remedial writs derives from Article V, Section 4.1 of the Missouri Constitution. *State ex rel. Dir. of Revenue v. Kinker,* 209 S.W.3d 1, 2 (Mo. App. E.D.2006) *citing State ex rel. Dir. of Revenue v. Mobley,* 49 S.W.3d 178, 179 (Mo. banc 2001). "Prohibition is an independent proceeding to correct or prevent judicial proceedings that lack jurisdiction." *State ex rel. Ford Motor Co. v. Nixon,* 219 S.W.3d 846, 849 (Mo.App. W.D.2007). We have issued writs of prohibition in situations that generally fall within one of three categories: 1) where there is an usurpation of judicial power because the trial court lacks personal or subject matter jurisdiction; 2) where there exists a clear excess of jurisdiction or an abuse of discretion such that the lower court lacks the power to act as contemplated; or 3) where there is no adequate remedy by appeal. *Id.* This case falls into the second category.

### Discussion

We are asked to consider whether Respondent abused its discretion when it ordered Relator to respond to Plaintiff's discovery requests. Relator contends that a writ of prohibition is the sole remedy that will afford it relief from having to expend considerable resources responding to Plaintiff's overly broad, unduly burdensome, and harassing discovery requests, which seek both irrelevant and confidential information. Respondent, on the other hand, argues that the discovery is designed to obtain evidence of Relator's net worth, which is relevant and admissible in such action seeking punitive damages.

In considering this matter, we recognize the sound principle that the trial court is vested with broad discretion in administering the rules of discovery, which should not be disturbed absent a trial court's abuse of discretion. *State ex rel. Kawasaki Motors Corp., U.S.A. v. Ryan,* 777 S.W.2d 247, 251 (Mo.App. E.D.1989). Given the wide latitude and generous deference accorded trial courts in matters of discovery, our initial inclination is to allow Respondent's rulings with regard to discovery matters. However, when a trial court orders discovery that exceeds its authority or abuses its discretion, prohibition is the proper remedy. *Id.* If the matter before us addressed only the scope of discovery, our standard of review would lead us to a different holding. However, the procedural history of this case calls into question Respondent's actions in light of this Court's limited remand, which extends our review and analysis beyond the mere scope of discovery.

The deference granted to trial courts in controlling discovery matters assumes first that discovery sought is appropriate in the proceeding then pending before the trial court. Respondent's authority to act in the post-trial proceeding is governed by our mandate. We appropriately look to that mandate when deciding the propriety of Respondent's actions in the post-trial proceeding.

This matter was remanded to the trial court with specific orders from this Court that the punitive damages award of $2,800,000 be reversed because the award

was excessive and an unconstitutional denial of due process. *Kelly*, 245 S.W.3d at 851. Our analysis reviewed the disparity between the actual damages award of $4,300 and the punitive damages award of $2,800,000. In particular, we reviewed this disparity in light of the United States Supreme Court's finding that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process," and "[s]ingle-digit multipliers are more likely to comport with due process, while still achieving the State's goal of deterrence and retribution, than awards with ratios in [the] range of 500 to 1," *Id.*, citing *Campbell*, 538 U.S. at 424, 123 S.Ct. 1513. In concluding that the punitive damages award of $2,800,000 raised a "presumption of unconstitutionality per the holding in *Campbell*," we reasoned that the ratio of the punitive damages award to compensatory award was 651 to 1, and thus "excessive and disproportionate." *Kelly*, 245 S.W.3d at 851.

■ Given our holding regarding the excessiveness of the punitive damages award, we remanded with directions to the trial court to review the jury's punitive damages award in light of the due process constitutional considerations. A court reviews the constitutionality of a punitive damages award by examining only "(1) the reprehensibility of the defendant's misconduct; (2) the disparity between the harm and punitive award; and (3) the difference between the punitive award and penalties authorized or imposed in comparable cases." *Scott*, 176 S.W.3d at 144. Our mandate is clear that the punitive damage award must be reduced to comply with the due process requirements of the Constitution. By what amount the award should be reduced to avoid running afoul of constitutional concerns is an inquiry left for the trial court applying the factors discussed above.

Citing *Hess v. Chase Manhattan Bank, USA, NA*, 220 S.W.3d 758, 774 (Mo. banc 2007), Respondent suggests that post-trial discovery on issues remanded to the trial court is permissible, and therefore the standard of according deference on discovery matters requires our denial of Relator's Petition. Respondent's reliance upon *Hess* is misplaced. *Hess* does not stand for the proposition that a party is entitled to discovery upon remand, but merely recognizes that, upon remand, discovery may be appropriate depending upon what issues are remanded to the trial court. In fact, in remanding the issue of Chase's liability under the Merchandising Practices Act, the *Hess* court determined that only one of the three elements necessary to support a claim under the Merchandising Practices Act was appropriate for remand because the jury necessarily found that Hess satisfied the other two elements required to prove a violation of the Act. *Id.* at 773–74. The *Hess* court stated that "following such discovery as may be appropriate" the trial court could then address the sole remaining issue. *Id.* at 774. Analogous to *Hess*, this Court's remand to the trial court was limited to the issue of the constitutionality of the punitive damages award. Discovery on issues beyond the scope of our remand would needlessly waste both the parties' and judiciary's resources. Because of the limited scope of our remand, we find that additional discovery is not appropriate here.[1]

■ The facts before us simply do not allow for additional discovery of Relator's

---

1. Our ruling here does not expand or limit existing authority regarding the general discoverability of financial data or net worth, but narrowly focuses on the mandate given to the trial court for remand of the case in *Kelly*, 245 S.W.3d at 841.

purported "net worth" or other financial data that previously was obtained through pretrial discovery, and was presented to the jury during the 2006 trial. Similar to the situation in *Hess*, the financial worth evidence obtained through pre-trial discovery and presented to the jury at trial sufficiently supported the jury's determination of a punitive damages award of $2,800,000, and will necessarily support a lesser punitive damages award that is consistent with constitutional due process requirements. Here, given the limited scope of this Court's remand, the trial court need not address Relator's net worth in its post-trial review of the punitive damages award. Respondent's mandate is to review the punitive damages award in light of the three constitutionality factors listed above. *Scott*, 176 S.W.3d at 145.

This Court has found the punitive damages award at issue to be unconstitutionally excessive. *Kelly*, 245 S.W.3d at 851. Because our mandate to Respondent is to review the punitive damages award in light of our ruling, we conclude that Plaintiff has no legal basis for seeking post-trial discovery related to Relator's net worth. As a result, we find Respondent exceeded its authority and abused its discretion by ordering that Relator respond to Plaintiff's post-trial discovery requests. The information sought by the post-trial discovery requests has no relevance to the trial court's limited area of inquiry on remand.[2]

### Conclusion

The Preliminary Order in Prohibition is hereby made absolute. Respondent is directed to set aside its orders of April 3, 2009, May 7, 2009, and July 24, 2009, and is prohibited from taking any further action relating to the discovery of Relator's

---

**2.** Plaintiff seemingly misunderstands this Court's mandate and seeks post-trial discovery in an attempt to increase the punitive

net worth. The trial court is directed to proceed with its review of the punitive damage award in a manner consistent with this opinion and the mandate previously issued by this Court.

LAWRENCE E. MOONEY and GEORGE W. DRAPER, III, JJ., Concur.

damages award from a "measly $2,800,000" to $38,000,000.